PEOPLE ex rel. DEVON v. BAKER, Police Com'r.

(Supreme Court, Appellate Division, Second Department.  December 30, 1910.)

1. MUNICIPAL CORPORATIONS (§ 185*) — OFFICERS — REMOVAL — BURDEN OF PROOF.

In a proceeding before the police commissioner of the city of New York to remove a police officer for improper conduct, the burden is on the prosecution to establish such conduct.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 185.*]

2. MUNICIPAL CORPORATIONS (§ 185*)—OFFICERS—REMOVAL—PROCEEDINGS—SUFFICIENCY OF EVIDENCE.

In a proceeding before the police commissioner of New York City to remove a police officer for wrongfully assaulting and arresting another, evidence *held* to show that such other was the aggressor in the combat between him and the officer, so that the officer was justified in striking and arresting him.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 503; Dec. Dig. § 185.*]

Certiorari by the People, on the relation of James H. Devon, against William F. Baker, as Police Commissioner of the City of New York, to review a determination dismissing relator from the police department. Determination annulled, and relator reinstated.

Argued before JENKS, BURR, THOMAS, RICH, and CARR, JJ.

Thomas Kelby, for relator.

Sanders Shanks (James D. Bell, on the brief), for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

PER CURIAM. This proceeding brings up for review the action of the police commissioner of the city of New York in dismissing the relator from the police force of that city on a conviction under certain charges of improper conduct. The charges consisted of two specifications, as follows: (1) That the relator without cause or justification struck one Gregory with a club; (2) that the relator arrested Gregory unjustifiably, and made a charge against him, both at the station house and at the city magistrate's court, that Gregory had willfully assaulted him, the relator. There was a conviction on both charges, and a dismissal followed.

The happening out of which the charges arose took place about 2 o'clock in the morning of January 11, 1910. It appears that at that time one Gregory, with a party of men and women, were standing near the corner of Myrtle avenue and Broadway, waiting for a trolley car. They had spent the evening at a moving picture show at Richmond Hill, several miles away. After the closing up of the show, they had visited one saloon, where, according to their story, nothing but one glass of cider was consumed by each. After a very considerable lapse of time, they got to the place where they were waiting for the trolley car. In this party was Gregory's wife. She saw or thought she saw something that caused her to "scream" or "holler," as various of the witnesses put it. Gregory tried to stop her vocalization by putting his hand over her mouth. She struggled, and released his hand from her mouth, whereupon he clapped it on again. At this moment the relator, who was on duty as police patrolman in that locality, approached the group of which Gregory and his wife were quite conspicuous members. Under the circumstances just outlined, it was quite natural that the relator should approach this group. Gregory's story is that, when relator came to them, he struck Gregory in the face with his fist and then inquired, "Who is hitting this woman?" That Gregory explained that no one was hitting the woman, and attempted to walk away, but was followed by the relator, who beat him repeatedly over the head with a large night stick, and finally arrested him. Gregory claims that he did nothing except to attempt to hold the relator's arms in order to stop the clubbing. The extent of the clubbing described by Gregory would have been sufficient to have cut and mutilated him badly on and about the head. No cut or mutilation took place, and doubtless Gregory exaggerated the extent and severity of the clubbing. Such exaggeration would be quite natural under the circumstances. This tendency to exaggeration was not confined to this point alone; for, while he says that he did nothing to the police officer except to attempt to hold down his arm, it appears by the testimony of several of Gregory's own witnesses that Gregory and the relator fell to the ground while wrestling. The relator's explanation of the incident is that, when he heard the woman screaming, he approached the group, and saw Gregory with his hand over her mouth, and he inquired into the happening, whereupon Gregory struck him a violent blow in the mouth. He thereupon proceeded to arrest Gregory, who resisted violently. A scuffle took place. The relator denies that he struck Gregory with his club at all. In this

he is corroborated by a night watchman who was at hand when the trouble began. Although Gregory swore most positively, again and again, that he never struck the relator, the fact appears that when Gregory and the relator got to the station house the relator's lip was cut and swollen. On the next day, it was found by the police surgeon that the relator's gum was torn, and that three of his upper teeth were so loosened that they could be removed· by the fingers, that the lips were badly swollen and lacerated, and that one of his hands was abraded and the knuckles badly swollen and the little finger cut and bleeding. All of these things could have occurred to the relator, and yet he may have been guilty of having been the aggressor in· the beginning. The whole question, then, is: Who was the aggressor? On this point the testimony of the relator and his corroborating witness was clear, coherent, and probable. The testimony of Gregory and his witnesses was full of exaggerations, contradictions, and inconsistencies. In probative force it was weaker. It should not have turned the scales, as it did. The burden of proof was on·the prosecution. The weight of reliable evidence was for the defendant. The determination of the police commissioner was against the weight of evidence, and should be annulled.

The·determination of the police commissioner is annulled, the writ sustained, and relator reinstated, with $50 costs and disbursements.